# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| BRITISH AIRWAYS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-1124T |
| v. | ) | (Filed: March 21, 2024) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Adam P. Feinberg, Miller & Chevalier Chartered, Washington, D.C., for Plaintiff.

Karen E. Servidea, Tax Division, U.S. Department of Justice, Washington, D.C., with whom were Stefan R. Wolfe, Trial Attorney, Mary M. Abate, Assistant Chief, Court of Federal Claims Section, G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, David I. Pincus, Chief, Court of Federal Claims Section, and David A. Hubbert, Deputy Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

The plaintiff in this tax refund case, British Airways PLC, is a worldwide airline with headquarters in the United Kingdom. British Airways has reciprocal mileage award agreements with several U.S. domestic airlines. Under the agreements, members of the domestic airlines' frequent-flyer programs can earn frequent-flyer miles ("FFMs") in those programs by purchasing tickets for and flying on British Airways flights. Members of British Airways' frequent-flyer program, in turn, can earn miles in that program by purchasing tickets for and flying on the domestic airlines' flights.

British Airways compensates the domestic airlines on a per-mile basis for the FFMs they award to its passengers under the agreements. The central issue in this case is whether British Airways' payments to the domestic airlines are subject to the 7.5% excise tax that Internal Revenue Code ("I.R.C.") § 4261(a) imposes on "the amount paid for taxable transportation of any person." The government's position is that the payments are subject to the excise tax pursuant to I.R.C. § 4261(e)(3)(A), which states that the "amount paid for taxable transportation" within the meaning of § 4261(a) includes "[a]ny amount paid (and the value of any other benefit provided) to an air carrier (or any related person) for the right to provide mileage awards for . . . any transportation of persons by air."

British Airways contends that the government's interpretation of § 4261(e)(3)(A) is inconsistent with congressional intent. According to British Airways, Congress did not intend that provision to apply to payments between air carriers for FFMs that passengers earn for air travel. It argues that the purpose of § 4261(e)(3)(A) is to impose the excise tax under § 4261(a) on payments that financial institutions and other businesses make to air carriers for FFMs that customers earn for purchasing goods and services other than air travel. These include the miles customers may earn by using a credit card or, for example, patronizing hotels, restaurants, or rental car companies. British Airways therefore seeks refunds of the excise taxes it paid under § 4261(e)(3)(A) between 2011 and 2015.

The government filed two motions to dismiss portions of British Airways' complaint, arguing that the Court lacks subject-matter jurisdiction over claims concerning some of the taxable periods at issue in this case. The government also filed a motion for summary judgment in which it contends that British Airways is not entitled to a refund of the excise taxes it paid pursuant to I.R.C. § 4261(e)(3)(A).

For the reasons set forth below, the government's motions to dismiss are **DENIED**, and its motion for summary judgment is **GRANTED**.

## BACKGROUND[1]

## I.   Statutory Framework

### A.   The Excise Taxes

The Internal Revenue Code imposes excise taxes on amounts paid for transportation by air. Most pertinent to this case, I.R.C. § 4261(a) applies a 7.5% tax to "the amount paid for taxable transportation of any person." "Taxable transportation" primarily consists of air transportation that "begins in the United States or in the 225-mile zone and ends in the United States or in the 225-mile zone." I.R.C. § 4262(a). The "225-mile zone" is "that portion of Canada and Mexico which is not more than 225 miles from the nearest point in the continental United States." I.R.C. § 4262(c)(2).

A flight within the United States is not considered taxable transportation if it is part of a larger trip involving an international flight and the layover in the United States is not more than 12 hours. I.R.C. §§ 4262(a)(2), (c)(3). Amounts paid for international flights that begin <u>or</u> end in the United States (as opposed to domestic flights that begin <u>and</u> end in the United States) are subject to a $12 excise tax imposed by I.R.C.

---

[1] The facts set forth in this section are drawn from the allegations in British Airways' complaint, as well as the exhibits the parties have submitted in connection with the government's motion for summary judgment. Except as specifically noted, the facts are not in dispute.

§ 4261(c)(1). In addition, subsection (b)(1) of § 4261 imposes a $3 tax on each domestic segment of taxable transportation (i.e., a flight of one takeoff and one landing).

Subject to exceptions not relevant here, the excise taxes imposed by § 4261 are "paid by the person making the payment subject to the tax." I.R.C. § 4261(d). A person receiving payment for "facilities or services" upon which such taxes are imposed must collect the taxes from the person making the payment. I.R.C. § 4291.

### B.   The 1997 Taxpayer Relief Act and I.R.C. § 4261(e)(3)(A)

The excise taxes collected under I.R.C. § 4261 are deposited into the Airport and Airway Trust Fund. See Staff of the Joint Comm. on Tax'n, 105th Cong., Background Info. on Fed. Air Transp. Excise Taxes and the Airport and Airway Tr. Fund, at 2 (Comm. Print 1997). The Trust Fund, which was established in 1970, partially finances the costs of programs administered by the Federal Aviation Administration ("FAA"). Id.; see also Airport and Airway Development Act of 1970, Pub. L. 91-258, § 208, 84 Stat. 219, 250–52.

Over time, the Trust Fund provided a shrinking share of the monies needed to fund FAA programs. See Staff of the Joint Comm. on Tax'n, 105th Cong., Gen. Explanation of Tax Legis. Enacted in 1997 ("JCT Gen. Rep."), at 225 (Comm. Print 1997). In 1997, after a shortfall in FAA funding was narrowly averted by an emergency extension of excise taxes, Congress passed the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 788 (1997). Id. at 227; see also Airport and Airway Trust Fund Tax Reinstatement Act of 1997, Pub. L. 105-2, 111 Stat. 4 (1997); S. REP. NO. 105-33, at 159 (1997); H.R. REP. NO. 105-148, at 482 (1997). The Taxpayer Relief Act reauthorized and modified the excise taxes "to ensure a long-term, stable funding source for the Airport and Airway Trust Fund." JCT Gen. Rep. at 227; see also Taxpayer Relief Act § 1031(c).

In considering changes to the excise taxes, Congress took note of the fact that "[b]ecause both the domestic and international air passenger excise taxes are imposed only on transportation for which an amount is paid, no tax is imposed on 'free' travel," including "frequent flyer travel . . . for which the passenger is not directly charged." S. REP NO. 105-33, at 158 (1997). The House and Senate conferees explained in their report accompanying the Taxpayer Relief Act that the "[a]pplication of the [existing § 4261(a)] tax to transportation sold through credit card frequent flyer award and similar arrangements is unclear." H.R. REP. NO. 105-220, at 552 (1997) (Conf. Rep.). The House Committee on the Budget further observed that the "perceived fairness" of the excise taxes would be "improved if certain currently untaxed payments and passengers were required to contribute to the financing of the FAA programs from which they benefit." H.R. REP. NO. 105-148, at 482–83. "In furtherance of this goal," the Budget Committee noted, the Taxpayer Relief Act would, among other things, "clarif[y] that the tax applies to payments to airlines (and related parties) from credit card and other companies in exchange for the right to award frequent flyer or other reduced air travel rights." Id. at 483.

Congress provided the necessary clarification by amending I.R.C. § 4261 to add subsection (e)(3)(A). It provides as follows:

> Any amount paid (and the value of any other benefit provided) to an air carrier (or any related person) for the right to provide mileage awards for (or other reductions in the cost of) any transportation of persons by air shall be treated for purposes of [§ 4261(a)] as an amount paid for taxable transportation, and such amount shall be taxable under [§ 4261(a)] without regard to any other provision of this subchapter.

## II.      The Agreements Between British Airways and the Domestic Airlines

British Airways had mileage award agreements with three domestic airlines: American Airlines, Inc.; US Airways, Inc.; and Alaska Airlines, Inc. App. B to Def.'s Mot. for Summ. J. ("Def.'s App.") at B0001, B0004, B0106, B0109, B0202, B0269, B0338, B0341, ECF No. 87-1; see also id. at B0097, B0195, B0411–33. As noted, under those agreements, British Airways passengers who were members of the domestic airlines' frequent-flyer programs could opt to earn FFMs in those programs when they traveled on British Airways flights. Id. at B0004–05, B0009–10, B0202–03, B0206, B0341, B0345, B0411; see also App. to Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s App.") at P012–13, P021–23, ECF No. 88-1. In addition, the agreements provided that the domestic airlines' passengers who were members of British Airways' frequent-flyer program could earn FFMs in that program when they flew on the domestic airlines' flights. Def.'s App. at B0110, B0269–70, B0345.

Pursuant to the agreements, British Airways tracked which of its passengers elected to receive FFMs in the domestic airlines' frequent-flyer programs, as well as the miles they earned. Id. at B0011, B0013, B0078, B0207, B0209, B0253, B0349, B0368. It regularly reported the information to the domestic airlines. Id. at B0013, B0209, B0349. The agreements further provided that the domestic airlines would use the information British Airways supplied to award the passengers FFMs in their programs. Id. at B0005, B0011, B0203, B0207, B0345, B0368.

## III.      The Excise Taxes the Domestic Airlines Collected from British Airways

The domestic airlines charged British Airways a per-mile fee for the FFMs they awarded British Airways passengers under the agreements. Def.'s App. at B0018, B0050, B0213, B0238, B0347, B0369; see also Pl.'s App. at P009, P011, P054–55, P069. Pursuant to the agreements, the domestic airlines sent monthly or quarterly invoices to British Airways. Def.'s App. at B0018, B0079, B0213, B0255, B0347, B0369. The invoices detailed the amounts British Airways owed for the FFMs accrued during the billing period and, in addition, included the 7.5% excise tax imposed by I.R.C. § 4261(a) on amounts paid for air travel in the United States. E.g., id. at B0511–13, B0521, B0793, B0833–36, B0953–57, B0968, B0971, B0976, B1146–49, B1155; Pl.'s App. at P068–69; see also I.R.C. § 4262(a)(1).

Between the quarterly periods ending June 30, 2011, and March 31, 2015, the domestic airlines collected roughly $11.4 million in excise taxes from British Airways. See Redacted Compl. ¶¶ 15, 19, 22, ECF No. 23. They then remitted the money collected to the Department of the Treasury, as required by statute and IRS rules. Id. ¶ 14; I.R.C. § 4291; Treas. Reg. § 40.6011(a)-1(a)(1), (3).

## IV.  Administrative Refund Claims

In 2014, 2017, and 2018, British Airways filed administrative claims seeking refunds of the excise taxes it paid. Redacted Compl. ¶¶ 25–27; see also id. Exs. B–D.[2] It argued that the payments it made to the domestic airlines were not "for the right to provide" FFMs and therefore not covered by I.R.C. § 4261(e)(3)(A). Id. Ex. B, at 32–33; id. Ex. C, at 47–49; id. Ex. D, at 68–70. British Airways argued in the alternative that it was at least entitled to a refund of the excise taxes attributable to the FFMs that passengers later redeemed for services and goods other than taxable air travel. Id. ¶¶ 17, 20, 23; id. Ex. C, at 49–50; id. Ex. D, at 70.

The IRS found British Airways' alternative claim meritorious. See id. ¶¶ 17, 20, 23; Redacted Am. Answer ¶¶ 17, 20, 23, ECF No. 52. It therefore refunded the excise taxes attributable to the FFMs that passengers redeemed for services and goods other than taxable air travel. Redacted Am. Answer ¶¶ 17, 20, 23. But the IRS disallowed the remaining amounts of British Airways' 2014, 2017, and 2018 refund claims—some $5.6 million for the period between 2011 and 2015. Redacted Compl. ¶¶ 28–30; see also id. Ex. E, at 85–87; id. Ex. G, at 95–96; id. Ex. I, at 103.

## V.  This Action and the Pending Motions

British Airways filed this lawsuit in 2019. Compl., ECF No. 1. It seeks an order directing the IRS to refund the remaining $5.6 million of excise taxes that it paid during the quarterly periods ending June 30, 2011, through March 31, 2015. Redacted Compl. at 1, 15; see also id. ¶¶ 18, 21, 24.[3]

---

[2] The 2014 claim sought refunds for the quarterly periods ending June 30, 2011, through December 31, 2013. Redacted Compl. Ex. B, at 31, 34–35. The 2017 claim requested a refund of the excise taxes British Airways paid between March and December 2014— i.e., during the quarterly periods ending June 30, 2014, to March 31, 2015. See id. Ex. C, at 46, 51. And in the 2018 claim, British Airways sought a refund of the excise taxes that it paid between January 1, 2015, and January 31, 2017. Id. Ex. D, at 67, 72.

[3] In 2022, British Airways voluntarily dismissed its claim for a refund of $252,845 of excise taxes that it paid during the taxable period ending June 30, 2011. See Stipulation for Partial Dismissal, ECF No. 62. At present, British Airways therefore seeks a refund of roughly $5.3 million of excise taxes that it paid during the quarterly periods ending September 30, 2011, through March 31, 2015.

There are several dispositive motions currently before the Court. Two of the motions challenge the Court's subject-matter jurisdiction over claims covering specified taxable quarters for which the government contends British Airways failed to "duly file" administrative refund claims as required by the Internal Revenue Code. The first of these motions is the government's motion to dismiss the complaint in part as to the taxable quarters ending June 30, 2014, through March 31, 2015. Def.'s Mot. to Dismiss in Part ("Def.'s First Mot. to Dismiss"), ECF No. 63. The second is the government's motion to dismiss in part the portions of the complaint that seek a refund for the taxable quarters ending September 30, 2011, and December 31, 2011, or, alternatively, for summary judgment with respect to the taxable quarter ending December 31, 2011. Def.'s Mot. to Dismiss in Part, or, in Alt., for Summ. J. ("Def.'s Second Mot. to Dismiss"), ECF No. 95.

Also pending before the Court is the government's motion for summary judgment as to all of British Airways' refund claims. Def.'s Mot. for Summ. J., ECF No. 87. In that motion, the government argues that British Airways' payments to the domestic airlines were subject to the 7.5% excise tax that I.R.C. § 4261(a) imposes on "amount[s] paid for taxable transportation" because they were "amount[s] paid . . . to an air carrier . . . for the right to provide mileage awards for . . . any transportation of persons by air" within the meaning of § 4261(e)(3)(A).

The Court held an oral argument on the government's motion for summary judgment on January 10, 2024. Order, ECF No. 112; Order, ECF No. 113.

## DISCUSSION

## I.    The Government's Motions to Dismiss Based on Lack of Subject-Matter Jurisdiction

As described above, the government has filed motions to dismiss on jurisdictional grounds and for partial summary judgment as to several of the taxable quarters for which British Airways claims entitlement to refunds. For the reasons set forth below, the government's motions seeking dismissal based on lack of jurisdiction are without merit.

### A.    Court of Federal Claims Jurisdiction Over Tax Refund Claims

The Tucker Act grants the Court of Federal Claims jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well established that this jurisdictional grant extends to suits for the refund of taxes remitted to the Treasury. See Ont. Power Generation v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); Shore v. United States, 9 F.3d 1524, 1525 (Fed. Cir. 1993); see also 28 U.S.C. § 1346(a)(1) (granting the Court of Federal Claims concurrent jurisdiction with the district courts over civil actions "against the United States for the

recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected").

This Court's exercise of its jurisdiction over tax refund claims, however, is subject to I.R.C. § 7422(a). That provision states in pertinent part that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary." To meet the "duly filed" requirement, an administrative refund claim must be filed "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." I.R.C. § 7422(a).

### B.    The Government's Arguments

The government argues that the Court lacks jurisdiction over British Airways' refund claims for the taxable quarters ending June 30, 2014, through March 31, 2015. Def.'s First Mot. to Dismiss at 1. It contends that the administrative refund claims for those quarters were not duly filed because they did not comply with Treasury Department regulations that require each refund claim to be "verified by a written declaration that it is made under the penalties of perjury." Id. at 14 (emphasis omitted) (quoting Treas. Reg. § 301.6402-2(b)(1)); see also I.R.C. § 7422(a). According to the government, British Airways failed to satisfy this regulatory requirement because neither of the individuals who signed the Forms 8849 covering the taxable quarters ending June 30, 2014, through March 31, 2015, were authorized to sign tax refund claims on British Airways' behalf. Def.'s First Mot. to Dismiss at 17–23.

The government similarly argues that the refund claims covering the taxable quarters that ended September 30, 2011, and December 31, 2011, which British Airways timely filed on July 31, 2014, were not duly filed. Def.'s Second Mot. to Dismiss at 1–2, 14, 20. It notes that the IRS Form 8849 that British Airways submitted did not break out the refund amounts British Airways was claiming on a quarter-by-quarter basis. Id. at 4, 14, 20; see also Redacted Compl. Ex. A. According to the government, the claim therefore did not comply with Treasury Regulation § 301.6402-2(b)(1), which requires that an administrative claim "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [IRS] of the exact basis thereof." Def.'s Second Mot. to Dismiss at 14.

The government contends that compliance with the "duly filed" requirement is a jurisdictional prerequisite to filing a tax refund suit in this Court. Def.'s First Mot. to Dismiss at 11–12; see also id. at 23–28; Def.'s Second Mot. to Dismiss at 11–12, 26–31. Therefore, it argues, the Court should dismiss the claims at issue in accordance with RCFC 12(b)(1). Def.'s First Mot. to Dismiss at 1–2, 11–12; Def.'s Second Mot. to Dismiss at 1–2, 10–11.

### C.   <u>Recent Federal Circuit Precedent</u>

The government's argument that the "duly filed" requirement is jurisdictional is inconsistent with recent and controlling Federal Circuit precedent. In <u>United States v. Dalm</u>, the Supreme Court, citing I.R.C. § 7422(a), held that a taxpayer's failure to file an administrative claim with the IRS within the period of time prescribed by statute deprives the court of "jurisdiction over [the] suit for refund." 494 U.S. 596, 609–10 (1990). In <u>Brown v. United States</u>, 22 F.4th 1008 (Fed. Cir. 2022), however, the court of appeals "ruled that <u>Dalm</u>'s jurisdictional characterization applies to 'the fact of filing' in the time allowed, but not to § 7422(a)'s 'duly filed' requirements governing 'the adequacy of the filing' if timely made, and held the latter not to be jurisdictional in nature." <u>Dixon v. United States</u>, 67 F.4th 1156, 1161 (Fed. Cir. 2023) (quoting <u>Brown</u>, 22 F.4th at 1011–12).

The panel in <u>Brown</u> acknowledged that its holding regarding the non-jurisdictional nature of the "duly filed" requirement was inconsistent with the Federal Circuit's ruling in previous cases that "a taxpayer's failure to comply with other § 7422(a) requirements (including those implemented by regulation) generally is jurisdictional." 22 F.4th at 1011; <u>see also</u> <u>Sun Chem. Corp. v. United States</u>, 698 F.2d 1203, 1206 (Fed. Cir. 1983) (holding that a "sufficient claim for refund is a jurisdictional prerequisite to a refund suit"); Def.'s Reply in Supp. of Its First Mot. to Dismiss at 16 (gathering cases), ECF No. 82. But the panel held that it could not reconcile the "jurisdictional characterization" of § 7422(a)'s requirements in the court of appeals' earlier precedent with the Supreme Court's intervening decision in <u>Lexmark International, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 125–28, 128 n.4 (2014). <u>Brown</u>, 22 F.4th at 1011.

In <u>Lexmark</u>, the Supreme Court held that whether a plaintiff's statutory cause of action is "valid . . . does not implicate subject-matter jurisdiction, <u>i.e.</u>, the court's statutory or constitutional <u>power</u> to adjudicate the case." 572 U.S. at 128 n.4 (internal quotation mark omitted) (quoting <u>Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 643 (2002)). The panel in <u>Brown</u> likened the "so-called 'statutory standing' defects" that the Court in <u>Lexmark</u> said were not jurisdictional to the "duly filed" requirement in I.R.C. § 7422(a). <u>See</u> <u>Brown</u>, 22 F.4th at 1011–12 (quoting <u>Lexmark</u>, 572 U.S. at 128 n.4). That requirement, the panel concluded, "is more akin to a claims-processing rule than a jurisdictional requirement." <u>Brown</u>, 22 F.4th at 1012.

The government argues that the panel that decided <u>Brown</u> erred when it held that the Supreme Court's intervening decision in <u>Lexmark</u> undermined the validity of prior Federal Circuit precedent. Def.'s First Mot. to Dismiss at 23–28. The government therefore asks the Court to disregard <u>Brown</u> and follow the earlier decisions of the Federal Circuit and its predecessor court. <u>Id.</u>; <u>see, e.g.</u>, <u>Sun Chem. Corp.</u>, 698 F.2d at 1206.

The Court agrees that, as a general principle, a Federal Circuit panel is bound by the decisions of earlier Federal Circuit panels. <u>Deckers Corp. v. United States</u>, 752 F.3d

949, 964 (Fed. Cir. 2014); see also Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1316 (Fed. Cir. 2013) ("Panel opinions are, of course, opinions of the court and may only be changed by the court sitting en banc."). It also recognizes that, when panel decisions are in conflict, courts applying Federal Circuit precedent are bound by the decision of the earlier panel. Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988).

It is equally well established, however, that "a later panel can recognize that the court's earlier decision has been implicitly overruled as inconsistent with intervening Supreme Court authority." Troy v. Samson Mfg. Corp., 758 F.3d 1322, 1326 (Fed. Cir. 2014) (emphasis added). In that circumstance, which was presented in Brown, see 22 F.4th at 1011–12, the court of appeals is "bound to follow [intervening Supreme Court] precedent rather than [its] own prior panel decisions." Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1235 (Fed. Cir. 2019).

In short, the Brown court's conclusion that Lexmark undermined circuit precedent with respect to I.R.C. § 7422(a) provided "a permissible basis on which to overrule prior panel opinions." Vensure HR, Inc. v. United States, 164 Fed. Cl. 276, 283 (2023) (citing Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC, 927 F.3d 1292, 1305 (Fed. Cir. 2019)). This Court is therefore bound by the holding in Brown, 22 F.4th at 1012, that § 7422(a)'s "duly filed" requirement is not jurisdictional. See Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (explaining that "a circuit court decision, if applicable, controls"). The government's motions to dismiss the refund claims for the taxable quarters ending September 30, 2011; December 31, 2011; and June 30, 2014, through March 31, 2015; under RCFC 12(b)(1) based on lack of jurisdiction are therefore denied.[4]

## II.    The Government's Motion for Summary Judgment

As noted, the government has also filed a motion for summary judgment as to the entirety of British Airways' complaint. See Def.'s Mot. for Summ. J. The government argues in that motion that British Airways is not entitled to any refund because its payments to the domestic airlines were subject to the 7.5% excise tax on amounts paid for air travel under I.R.C. § 4261(a). Id. at 35–47. For the reasons set forth below, the Court agrees with the government's argument and will grant its motion for summary judgment.

---

[4] In a footnote, the government suggests that if the Court concludes that the "duly filed" requirement is not jurisdictional, then it should follow the Brown panel's lead and dismiss the portions of British Airways' complaint for which administrative claims were allegedly not duly filed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s First Mot. to Dismiss at 28 n.19. The Court, however, finds it unnecessary to decide whether the claims at issue were duly filed in the context of a motion to dismiss under RCFC 12(b)(6) because—as described below—British Airways' claims that its payments to the domestic airlines are not subject to the 7.5% excise tax under I.R.C. § 4261(a) fail as a matter of law on their merits.

### A.     Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. RCFC 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material for purposes of summary judgment if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

In this case, the facts are not in dispute. The issue before the Court is one of statutory interpretation: whether British Airways' payments to the domestic airlines in accordance with the terms of their mileage award agreements constituted amounts paid "for the right to provide mileage awards for (or other reductions in the cost of) any transportation of persons by air" within the meaning of I.R.C. § 4261(e)(3)(A). Because the proper interpretation of a statute is a pure question of law, SNIPR Techs. Ltd. v. Rockefeller Univ., 72 F.4th 1372, 1377 (Fed. Cir. 2023), British Airways' claims are amenable to disposition by summary judgment.[5]

### B.     Statutory Language

"Statutory interpretation begins with the language of the statute, the plain meaning of which [courts] derive from its text and its structure." Myore v. Nicholson, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting McEntee v. Merit Sys. Prot. Bd., 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning." Id.; see also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999) ("[W]here the statutory language provides a clear answer, [the Court's inquiry] ends there . . . ."); Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

As noted above, I.R.C. § 4261(a) imposes a 7.5% tax on "the amount paid for taxable transportation of any person." Section 4261(e)(3)(A), the statutory provision whose meaning is at the heart of this case, states in turn that "[a]ny amount paid . . . to an air carrier . . . for the right to provide mileage awards for (or other reductions in the cost

---

[5] In its motion for summary judgment, the government argues in the alternative that, even if the Court concludes that British Airways' payments to the domestic airlines for the award of FFMs are not taxable, the government is entitled to an offsetting adjustment for taxes that British Airways allegedly owes on other payments it made to the domestic airlines. Def.'s Mot. for Summ. J. at 2, 47–49. Because the Court determines that British Airways' payments for FFMs were subject to the excise tax under I.R.C. § 4261(a) and that no additional refund is due, it does not address the government's offsetting adjustment argument.

of) any transportation of persons by air shall be treated for purposes of [§ 4261(a)] as an amount paid for taxable transportation, and such amount shall be taxable under [§ 4261(a)] without regard to any other provision of this subchapter."

It is undisputed that the excise taxes collected from British Airways were imposed on "amount[s]" British Airways "paid" to the domestic "air carrier[s]" under their agreements. See I.R.C. § 4261(e)(3)(A); Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 12–13, ECF No. 88; see also, e.g., Def.'s App. at B0511–13, B0521, B0793, B0833–36, B0968, B0971, B0976, B1155. The central issue before the Court is whether British Airways' payments met the statutory predicate for taxation—i.e., whether they were made "for the right to provide mileage awards for . . . [the] transportation of persons by air." I.R.C. § 4261(e)(3)(A). The Court concludes that the statutory predicate is plainly met.

In their contracts with British Airways, the domestic airlines agreed to award FFMs to British Airways passengers who were members of their frequent-flyer programs when the passengers purchased tickets for and traveled on British Airways flights. Def.'s App. at B0004–05, B0009–10, B0202–03, B0206, B0341, B0345, B0411. British Airways agreed in turn to make payments to the domestic airlines, consistent with the terms of the contracts, for each FFM awarded to its passengers. Id. at B0018, B0050, B0213, B0238, B0347, B0369; see also Pl.'s App. at P009, P011, P054–55, P069.

The only remaining question is whether the amounts British Airways paid to the domestic airlines were for the "right to provide mileage awards." See I.R.C. § 4261(e)(3)(A). As the Supreme Court has observed, "[t]he term 'right,' certainly when used in a tax statute, must be given its normal and customary meaning." United States v. Byrum, 408 U.S. 125, 136 (1972). And "right" customarily "connotes an ascertainable and legally enforceable power." Id.; see also Webster's Third New International Dictionary 1955 (1993) (defining "right" as including "something to which one has a just claim: as [among other things] . . . the power or privilege to which one is justly entitled"); Black's Law Dictionary 1517 (10th ed. 2014) (defining "right" as including "[s]omething that is due to a person by just claim" and "[a] power, privilege, or immunity secured to a person by law").

In this case, British Airways secured a contractual right (i.e., a "legally enforceable power") to provide mileage awards in the domestic airlines' frequent-flyer programs to British Airways customers by agreeing to pay the domestic airlines the amounts specified under the contracts. See Def.'s App. at B0004–05, B0018, B0050, B0202–03, B0213, B0238, B0341, B0345, B0347, B0369, B0411; Byrum, 408 U.S. at 136. Its payments were thus made "for the right to provide mileage awards." See I.R.C. § 4261(e)(3)(A).

British Airways' contrary interpretation of the "for the right to provide mileage awards" language is unpersuasive. See Pl.'s Opp'n at 16–19. It does not deny that it made payments to the domestic airlines in exchange for their provision of FFMs to British Airways passengers. See id. at 12–13. It also does not contest that—but for British

Airways' payments under its contracts with the domestic airlines—its passengers would not have been eligible to earn those mileage awards for flying on British Airways flights. See id. at 16. And it does not deny that—but for the payments—British Airways would have had no right to provide its passengers with FFMs in the domestic airlines' frequent-flyer programs. See id.

British Airways argues, however, that its payments to the domestic airlines are not taxable under I.R.C. § 4261(e)(3)(A) because, it asserts, that provision "does not apply to payments for FFMs that are earned by virtue of actual flight activity (as opposed to say, using a credit card)." Id. at 2. British Airways' assertion in this regard is not grounded in the statutory text. Section 4261(e)(3)(A) does not make the application of the excise tax dependent on how FFMs are earned; rather, application of the tax depends on whether the amounts paid to an airline are "for the right to provide mileage awards."

With respect to that question, British Airways argues that—as an airline with its own frequent-flyer program—it already had a right to provide mileage awards to its passengers irrespective of the amounts it paid to the domestic airlines pursuant to its agreements. Pl.'s Opp'n at 16–19. It observes that "even if those payments and agreements did not exist, the passengers on the British Airways flights in question would still have earned FFMs (they would just have earned them under a different airline's program)." Id. at 16.

This line of reasoning fails to persuade. To be sure, British Airways already had the ability (and the right) to provide members of its frequent-flyer program with FFMs in that program. But its payments to the domestic airlines were for a right British Airways most certainly did not already have: the right to provide its passengers with FFMs in the domestic airlines' frequent-flyer programs. British Airways would not have had that right were it not for the payments British Airways made to the domestic airlines as specified in their contracts.

Also unpersuasive is British Airways' argument that it did not pay the domestic airlines for the right to provide mileage awards, but "for something else," i.e., to secure "a marketing benefit to entice more customers to fly on British Airways." Id. at 2; see also id. at 18 (arguing that "[i]nstead of being for 'the right to provide' FFMs, [British Airways' payments to the domestic airlines] were for the ability to have FFMs awarded to the passengers in the [frequent-flyer] program of their choosing," and "[t]hat ability provides marketing value to British Airways because it entices members of the Domestic Airlines' [frequent-flyer] programs to purchase British Airways flights").

The Court understands that the ultimate purpose of British Airways' agreements with the domestic airlines was to secure a marketing advantage. See Def.'s App. at B0438–40; Pl.'s App. at P002–04. But British Airways did so by exercising the right for which it paid the domestic airlines—i.e., the right to provide its passengers with FFMs in the domestic airlines' frequent-flyer programs. In that respect, British Airways is indistinguishable from the financial institutions, rental car companies, and hotels that it acknowledges are subject to the excise tax because the payments they make to air carriers

are "for the right to provide mileage awards." <u>See</u> Pl.'s Opp'n at 3, 8; I.R.C. § 4261(e)(3)(A). Those businesses also enter mileage award arrangements with air carriers to improve their marketability.

There is also no merit to British Airways' further contention that the government's interpretation of I.R.C. § 4261(e)(3)(A) renders the phrase "the right to provide" superfluous, in contravention of principles of statutory construction. Pl.'s Opp'n at 16, 18; <u>see</u> <u>Wolfe v. McDonough</u>, 28 F.4th 1348, 1354–55 (Fed. Cir. 2022) ("The presumption against surplusage . . . provides that a 'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" (quoting <u>Hibbs v. Winn</u>, 542 U.S. 88, 101 (2004))). According to British Airways, if § 4263(e)(3)(A) was intended to apply to its payments to the domestic airlines, then the "right to provide" language is unnecessary. Pl.'s Opp'n at 16, 18. The statute could have instead more simply stated that the tax applied to all payments to air carriers "for mileage awards." <u>Id.</u>

The "right to provide" language, however, is not without purpose. It eliminates any potential ambiguity about whether the tax is to be imposed on payments for mileage awards that the payer provides to someone else. Moreover, "the rule against giving a portion of text an interpretation which renders it superfluous does not prescribe that a passage which could have been more terse does not mean what it says." <u>Bruesewitz v. Wyeth LLC</u>, 562 U.S. 223, 236 (2011). "The rule applies only if verbosity and prolixity can be eliminated by giving the offending passage, or the remainder of the text, a competing interpretation." <u>Id.</u>

The only competing interpretation that British Airways offers is that the "right to provide" language distinguishes its payments to the domestic airlines from the payments of credit card companies, hotels, and rental car companies because the latter group of payers, unlike British Airways, do not operate their own frequent-flyer programs and, therefore, do not already have a right to provide FFMs. Pl.'s Opp'n at 18–19. But as the Court has already explained, British Airways' payments, just like those of the other payers, are for the right to provide FFMs in the domestic airlines' frequent-flyer programs. Its argument based on superfluousness is therefore unavailing.

## C.    <u>Legislative History of I.R.C. § 4261(e)(3)(A)</u>

Lacking support in the statutory text for its interpretation of § 4261(e)(3)(A), British Airways repairs to the provision's legislative history. <u>See</u> Pl.'s Opp'n at 19–25. It contends that an examination of that history reveals that Congress intended to limit the application of the excise tax imposed by § 4261(a) to payments for the right to award FFMs earned through activities other than "actual air travel." <u>Id.</u> at 2–3, 19–20 (quoting H.R. REP. NO. 105-220, at 555–56 (1997) (Conf. Rep.)).

Legislative history may not of course be employed "to 'muddy' the meaning of 'clear statutory language.'" <u>Food Mktg. Inst. v. Argus Leader Media</u>, 139 S. Ct. 2356, 2364 (2019) (quoting <u>Milner v. Dep't of the Navy</u>, 562 U.S. 562, 572 (2011)); <u>see also</u>

Capella Sales & Servs. Ltd. v. United States, 878 F.3d 1329, 1334 (Fed. Cir. 2018) (rejecting the "use of legislative history and other extrinsic factors to create, rather than solve, an ambiguity in otherwise clear statutory text"). Indeed, "[i]f the statutory language is clear, 'and the legislative history does not show that congressional intent was clearly contrary to the section's apparent meaning, th[e] meaning of the statute controls, and there is nothing else for [the court] to review.'" Bank of Am. Corp. v. United States, 964 F.3d 1099, 1103 (Fed. Cir. 2020) (second alteration in original) (emphasis added) (quoting DeCosta v. United States, 987 F.2d 1556, 1558 (Fed. Cir. 1993)); see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1389 (Fed. Cir. 2013) ("To overcome the plain meaning of a statute, a party must show that the legislative history demonstrates an 'extraordinary showing of contrary intentions.'" (quoting Garcia v. United States, 469 U.S. 70, 75 (1984))).

In this case, there is nothing in the legislative history of the Taxpayer Relief Act, which, as noted, included the language now codified at I.R.C. § 4261(e)(3)(A), that reflects a congressional intent "clearly contrary" to the "apparent meaning" of that language. See Taxpayer Relief Act § 1031(c); Bank of Am., 964 F.3d at 1103 (quoting DeCosta, 987 F.2d at 1558). If anything, the legislative history supports the government's interpretation of the statute.

The language of § 4261(e)(3)(A) appeared in both the Senate bill, S. 949, and the House bill, H.R. 2014. See S. 949, 105th Cong. § 841(c)(2) (as reported by S. Comm. on Finance, June 20, 1997); H.R. 2014, 105th Cong. § 1041(c)(2) (as reported by House Comm. on the Budget, June 24, 1997). In its report accompanying H.R. 2014, the House Budget Committee provided an expansive list of "untaxed payments" that I.R.C. § 4261(e)(3)(A) was intended to reach. See H.R. REP. NO. 105-148, at 482–84. These included "payments for frequent flyer miles purchased by credit card companies, telephone companies, rental car companies, television networks, restaurants and hotels, and other businesses for distribution to their customers and others." Id. at 484 (emphasis added). The Senate Finance Committee similarly stated that the new statutory language would "clarif[y] that the [§ 4261(a)] tax applies to payments to airlines (and related parties) from credit card and other companies in exchange for the right to award frequent flyer miles or other reduced air travel rights." S. REP. NO. 105-33, at 160 (1997) (emphasis added). Like the House Budget Committee, the Senate Finance Committee further explained that the 7.5% excise tax would apply to "payments for frequent flyer miles purchased by credit card companies, telephone companies, rental car companies, television networks, restaurants and hotels, and other businesses for distribution to their customers and others (e.g., employees)." Id. at 162 (emphasis added).

The conference report accompanying the final version of the Taxpayer Relief Act is especially instructive. It stated that "[t]he conference agreement follows the House bill and Senate amendment provisions clarifying that the air passenger excise tax applies to payments to air carriers (and related parties) for the right to award air travel benefits." H.R. REP. NO. 105-220, at 555 (1997) (Conf. Rep.). In addition to the examples of taxable payments mentioned by the House and Senate reports, the Conference Committee specifically identified as subject to the tax "payments for frequent flyer miles (including

14

other rights to air transportation) <u>purchased by</u> . . . <u>air carriers and related parties</u>." <u>Id.</u> (emphasis added).

British Airways contends that reliance on this legislative history "misses the mark because it focuses on the types of businesses whose payments might be subject to I.R.C. § 4261(e)(3)(A), instead of the nature of the activity giving rise to the earning of the FFMs." Pl.'s Opp'n at 20. What these passages mean, British Airways says, is that "payments from air carriers—as with any other sort of business—<u>might</u> be subject to I.R.C. § 4261(e)(3)(A)." <u>Id.</u> at 21. For example, British Airways posits, if it purchased FFMs in the domestic airlines' frequent-flyer programs "to dole out to [its] customers as a goodwill gesture," as opposed to in exchange for travel on British Airways flights, then those payments would be taxable under § 4261(e)(3)(A). <u>Id.</u>

This interpretation of the language in the congressional reports is, first and foremost, implausible. British Airways has not alleged, much less shown, that—in the real world—airlines purchase other airlines' FFMs to provide to customers as a goodwill gesture. It is improbable that the conferees added a specific reference to FFMs "purchased by . . . air carriers" to their report to cover that narrow (if not non-existent) category of payments.

Moreover, the specific mention of "air carriers" in the conference report undermines British Airways' central argument, discussed above, that—because it already had a "right to provide mileage awards"—the payments it made to the domestic airlines must have been for something else. <u>See id.</u> at 16, 18; H.R. Rep. No. 105-220, at 555; I.R.C. § 4261(e)(3)(A). Presumably, air carriers that operate frequent-flyer programs and pay for FFMs in other airlines' programs "to dole out . . . as a goodwill gesture" also already have "the right to provide mileage awards," as British Airways interprets that phrase. <u>See</u> Pl.'s Opp'n at 21. Yet British Airways acknowledges that I.R.C. § 4261(e)(3)(A) would subject the payments those air carriers make to the § 4261(a) tax. <u>Id.</u>

British Airways also cites language from a different passage in the conference report which it says shows that Congress did not intend the I.R.C. § 4261(a) tax to apply where passengers earned mileage awards by purchasing air travel rather than through other arrangements. <u>See id.</u> at 19–20. In the cited passage, the report states that "[t]he conferees are aware that consumers accrue mileage awards from numerous sources, including actual air travel as well as programs giving rise to taxable payments under this provision of the conference agreement." H.R. REP. NO. 105-220, at 555. "[M]ileage awarded to consumers from actual air travel," the report observed, would not be "subject to tax under this provision." <u>Id.</u> at 556.

British Airways' reliance on this language is unavailing. First, British Airways has wrenched the language from its original context. When the Conference Committee made its observation distinguishing between miles earned from "actual air travel" and those earned through "programs giving rise to taxable payments," it was discussing a different provision of the statute: subparagraph (C) of § 4261(e)(3). <u>See id.</u> at 555–56.

That provision concerns the authority of the Secretary of the Treasury to "prescribe rules which exclude from the tax imposed by [§ 4261(a)] amounts attributable to mileage awards which are used other than for transportation of persons by air." I.R.C. § 4261(e)(3)(C). The passage cited in the conference report therefore addresses the tax treatment that may be afforded to payments for FFMs where the miles are redeemed for benefits other than air travel. See H.R. REP. NO. 105-220, at 555–56. It does not expressly address which programs and payments the Conference Committee intended the tax to reach. See id.

Further, the language in the conference report that distinguishes between the accrual of FFMs from "actual air travel" and from "programs giving rise to taxable payments" is ambiguous. See id. Among the possible explanations of what the Conference Committee meant when it discussed FFMs accrued from "actual air travel," the Court finds that the Committee was most likely referring to the familiar scenario where a member of Airline X's frequent-flyer program purchases a ticket for a flight on that airline and by flying earns miles in the program. In such instances, there is no separate "program giving rise to taxable payments" under I.R.C. § 4261(e)(3)(A). On the other hand, where Airline X arranges to pay Airline Y for the right to provide Airline X's passengers with FFMs in Airline Y's frequent-flyer program, the source of the earned miles is not just travel on Airline X; it is Airline X's payments under the program created by the contract between the two airlines. At any rate, the Conference Committee's mention of FFMs accrued from "actual air travel" is not "clearly contrary" to the ordinary meaning of the statutory language. See id.; Bank of Am., 964 F.3d at 1103.

Finally, the Court notes that British Airways' interpretation of the statute would frustrate one of its core purposes, which was to ensure that "payments and passengers were required to contribute to the financing of the FAA programs from which they benefit." H.R. REP. NO. 105-148, at 482–83. Under British Airways' interpretation, no I.R.C. § 4261(a) excise tax would be collected even when passengers whose tickets on British Airways flights are not subject to the tax receive FFMs in the domestic airlines' frequent-flyer programs—miles redeemable for domestic flights that burden FAA programs.

British Airways responds that many of the FFMs for which it pays are earned through flights that are subject to the excise tax imposed by I.R.C. § 4261(c), which applies to international flights that begin or end in the United States. Pl.'s Opp'n at 21. These flights, British Airways says, are no different than domestic airlines' flights into or out of the United States. Id. at 21–22. In both cases, passengers contribute to FAA programs by paying the § 4261(c) tax, not the § 4261(a) tax, on their tickets. Id. at 22. British Airways contends that further imposing the § 4261(a) tax on its payments for FFMs in connection with these international flights creates an anomalous result because members of the domestic airlines' frequent-flyer programs can earn FFMs for traveling on those airlines' international flights after paying only the § 4261(c) tax. Id. British Airways also argues that Congress demonstrated its willingness to allow airline passengers to burden FAA programs without paying the § 4261(a) tax when it excluded from the tax certain domestic flights that are segments of longer international trips. Id. at

23–24; see also I.R.C. § 4262(a)(2), (c)(3). For these flights, too, passengers pay only the § 4261(c) tax but may earn miles in a domestic airline's frequent-flyer program. Pl.'s Opp'n at 23–24.

The Court cannot say whether Congress foresaw when it enacted § 4261(e)(3)(A) that some passengers on international flights would accrue FFMs after paying the § 4261(c) tax only, while others would pay that tax and also see the subsequent inter-airline payments in connection with their FFMs taxed under § 4261(a). This result, however, is not "absurd" and does not "thwart the obvious purpose of the statute." See Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 575 (1982) (quoting Comm'r v. Brown, 380 U.S. 563, 571 (1965)).

As noted, the House Budget Committee identified a key purpose of § 4261(e)(3)(A) in its report accompanying H.R. 2014, where it wrote that "the perceived fairness" of the § 4261 excise taxes "will be improved if certain currently untaxed payments and passengers were required to contribute to the financing of the FAA programs from which they benefit." H.R. REP. NO. 105-148, at 482–83 (emphasis added). The language Congress enacted at I.R.C. § 4261(e)(3)(A), as the Court has explained, plainly imposes an excise tax on previously untaxed payments to air carriers "for the right to provide mileage awards" and thereby achieves Congress's stated purpose. That some of these payments are made in connection with flights for which a passenger has paid the § 4261(c) tax is not "at odds with the intentions" of Congress to tax previously untaxed payments and generate revenue for FAA programs. See Oceanic Contractors, 458 U.S. at 571; H.R. REP. NO. 105-148, at 482–83. The Court therefore finds no reason to deviate from the plain language of § 4261(e)(3)(A) in search of an alternative interpretation of the statute. See Oceanic Contractors, 458 at 575 (explaining that the Court has "refus[ed] to nullify statutes," even when they produce "hard or unexpected" results).

At any rate, the Court also notes that British Airways passengers pay no § 4261 excise taxes on flights that are entirely non-domestic. See Pl.'s Opp'n at 25. When these passengers elect to earn FFMs in the domestic airlines' frequent-flyer programs, the tax British Airways remits with its corresponding payments to the domestic airlines is the only contribution to FAA programs associated with the FFMs. British Airways' interpretation of the statute would therefore permit some of its passengers to earn FFMs that they could redeem for domestic flights while paying nothing to cover the cost of the FAA programs that support those flights. This result would contradict the plain language of I.R.C. § 4261(e)(3)(A) and Congress's stated purposes in enacting the statute. See H.R. REP. NO. 105-148, at 482–83.

## D.   IRS Notice 2002-63 and IRS Revenue Ruling 2002-60

In its motion for summary judgment, the government contends that its interpretation of I.R.C. § 4261(e)(3)(A) is supported by IRS Notice 2002-63 as well as IRS Revenue Ruling 2002-60. Def.'s Mot. for Summ. J. at 41–42. It further argues that those issuances are entitled to "considerable weight" under the standard set forth in Skidmore v. Swift & Co., 323 U.S. 134, 139–40 (1944), because they reflect "[t]he well-

reasoned views of the agenc[y] implementing [the] statute," and so "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Def.'s Mot. for Summ. J. at 42–43 (first alteration in original) (quoting United States v. Mead Corp., 533 U.S. 218, 227 (2001)).[6]

The Court agrees that IRS Notice 2002-63 is consistent with the government's argument that British Airways' payments to the domestic airlines are subject to the I.R.C. § 4261(a) excise tax. See I.R.S. Notice 2002-63, 2002-2 C.B. 644. The notice sets forth three rules relating to the application of the § 4261(a) excise tax to payments for mileage awards:

> (1) Amounts paid for mileage awards that cannot be redeemed for taxable transportation beginning and ending in the United States are not subject to tax. For purposes of this rule, mileage awards issued by a foreign air carrier are considered to be usable only on that foreign air carrier and thus not redeemable for taxable transportation beginning and ending in the United States. Therefore, amounts paid to a foreign air carrier for mileage awards are not subject to tax.

> (2) Amounts paid by an air carrier to a domestic air carrier for mileage awards that can be redeemed for taxable transportation are not subject to tax to the extent those miles will be awarded in connection with the purchase of taxable transportation.

> (3) Amounts paid by an air carrier to a domestic air carrier for mileage awards that can be redeemed for taxable transportation are subject to tax to the extent those miles will not be awarded in connection with the purchase of taxable transportation.

In Revenue Ruling 2002-60, 2002-2 C.B. 641, the IRS determined that Rule 3 of Notice 2002-63 applied to circumstances nearly identical to those presented here. Revenue Ruling 2002-60 involved a foreign airline that purchased FFMs from a domestic airline to award to passengers who purchased tickets on the foreign airline's flights. Under the ruling, because the foreign airline did not operate flights beginning and ending in the United States, the FFMs it offered to its passengers were not awarded in connection with the purchase of taxable transportation. Rev. Rul. 2002-60; see I.R.S. Notice 2002-63; I.R.C. § 4262(a). Hence, under Rule 3 of Notice 2002-63, the foreign airline's payments for the FFMs were subject to the tax imposed by § 4261(a). Rev. Rul. 2002-60; see I.R.S. Notice 2002-63.

---

[6] The Skidmore standard for reviewing agency interpretations of the law, dubbed "Skidmore deference," applies where an agency interprets a statute it is charged with administering, but does not do so pursuant to authority delegated by Congress to make rules having the force and effect of law. See Mead, 533 U.S. at 226–28; see also id. at 234–35.

The Court agrees that the payments at issue here fall under Rule 3 of Notice 2002-63 because they involve "[a]mounts paid by an air carrier [i.e., British Airways] to a domestic air carrier [i.e., American Airlines, Alaska Airlines, or US Airways] for mileage awards that can be redeemed for taxable transportation." See I.R.S. Notice 2002-63. In addition, the FFMs are not awarded in connection with the purchase of taxable transportation within the meaning of I.R.C. § 4261(a) because British Airways flights do not begin and end in the United States or within the 225-mile zone. See I.R.S. Notice 2002-63; I.R.C. § 4262(a).

British Airways does not deny that its payments to the domestic airlines fall under Rule 3 of Notice 2002-63. See Oral Arg. Tr. at 43–44, ECF No. 115. It points out, however, that the notice distinguishes between payments for FFMs that will not be awarded in connection with the purchase of taxable transportation (which payments are taxable under Rule 3) and payments for FFMs that will be awarded in connection with the purchase of taxable transportation (which payments are not taxable under Rule 2). Pl.'s Opp'n at 27–29; see I.R.S. Notice 2002-63. British Airways observes that Rule 2 is inconsistent with the government's position that I.R.C. § 4261(e)(3)(A) must be read expansively to cover any payments made to an airline for the right to award FFMs in that airline's frequent-flyer program. Pl.'s Opp'n at 27–28; see also Def.'s Mot. for Summ. J. at 38. Further, British Airways maintains that the statute does not distinguish between situations where miles are awarded in connection with the purchase of taxable transportation, and where they are awarded, as here, in connection with the purchase of transportation that is not taxable under I.R.C. § 4261(a). Pl.'s Opp'n at 29; see I.R.C. § 4262(a).

The Court agrees that there is tension between the government's interpretation of I.R.C. § 4261(e)(3)(A) and Rule 2 of Notice 2002-63. See Oral Arg. Tr. at 10–11. The payments at issue here, however, are covered by Rule 3. See id. at 43. Even if British Airways is correct that the statutory language does not permit the Secretary to exclude payments for the right to provide FFMs from the I.R.C. § 4261(a) excise tax because the FFMs will be awarded in connection with taxable transportation (and the Court expresses no opinion on that issue), that would not mean that British Airways' payments, which fall under the plain language of § 4261(e)(3)(A), are not subject to the tax.[7]

---

[7] The government does not squarely address British Airways' argument regarding the inconsistency between Rule 2 of Notice 2002-63 and the language of I.R.C. § 4261(e)(3)(A). Instead, it explains why the IRS found it appropriate to promulgate Rule 2 notwithstanding the apparent inconsistency. See Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 13, ECF No. 91. Rule 2, it says, "reflects the view that (1) part of an initial flight purchase price is attributable to the value of the mileage award to which the passenger will be entitled and (2) that it is appropriate to equate such part of the initial flight purchase price with the mileage payment." Id. It says that "[u]nder that view, where the initial flight purchase is of taxable transportation (i.e., as often happens with a domestic air carrier), the mileage payment, in some sense, is already taxed under

British Airways further argues that Notice 2002-63 and Revenue Ruling 2002-60 are inconsistent with previous IRS guidance, specifically, Revenue Ruling 55-534, 1955-2 C.B. 665. Pl.'s Opp'n at 26–27. According to British Airways, that ruling reflects the IRS's allegedly long-standing position that "the tax under § 4261 applies only to the customer's payment, not to payments between the airline that sold the ticket to the customer and another airline that provides part of the service the passenger originally purchased." Id. at 26.

Revenue Ruling 55-534, however, arose out of unique circumstances not presented here. It dealt with a situation where one airline suffered a mechanical failure and paid another airline to transport its passengers to their destination. Rev. Rul. 55-534. The IRS ruled that the inter-airline payments were not subject to the excise tax on "amounts paid for the transportation of persons by . . . air," reasoning that the tax "applies only to the payments made by, or on behalf of, the passengers for the complete transportation service." Id. The tax, according to the IRS, "d[id] not apply to payments made by the carriers between themselves in settlement of their charges for their respective services." Id.

According to British Airways, a similar situation is presented here because "[w]hen British Airways transports a passenger, and the FFMs are awarded under a Domestic Airline's [frequent-flyer] program, both airlines provide part of the transportation-related service purchased by the customer." Pl.'s Opp'n at 27. "The inter-airline payments for those services," it reasons, like the inter-airline payments at issue in Revenue Ruling 55-534, "all stem from the passenger's ticket payment 'for the complete transportation service.'" Id. (quoting Rev. Rul. 55-534).

Revenue Ruling 55-534 is inapposite for several reasons. First, it addresses circumstances where "the transportation of persons involves the services of two or more carriers." Rev. Rul. 55-534. The transactions at issue in this case did not involve transportation of persons by more than one carrier. British Airways performed "the complete transportation service." See id.

Second, Revenue Ruling 55-534 did not involve the interpretation of I.R.C. § 4261(e)(3)(A). Congress enacted the statutory provision more than forty years after the IRS issued the ruling. See Rev. Rul. 55-534; Taxpayer Relief Act § 1031(c); see also Treas. Reg. § 601.601(d)(2)(v)(e) (stating that taxpayers "should consider the effect of subsequent legislation" when determining if they may rely on a revenue ruling). Section 4261(e)(3)(A) is inherently incompatible with the notion that the § 4261(a) excise tax applies "only to the customer's payment" or "only to the payments made by, or on behalf of, the passengers." See Pl.'s Opp'n at 26 (quoting Rev. Rul. 55-534). For under

§ 4261(a)" so that the "'backstop' of § 4261(e)(3)(A) is not needed." Id. (quoting I.R.S. Notice 2001-6, 2001-1 C.B. 327).

§ 4261(e)(3)(A)'s express terms, certain payments that businesses (including other airlines) make to air carriers are subject to the tax. Indeed, Revenue Ruling 2002-60, which, as noted, applied Rule 3 of Notice 2002-63 to facts nearly identical to the those in this case, distinguished Revenue Ruling 55-534, explaining that the earlier ruling "does not stand for the broad proposition that all payments between air carriers are exempt from the § 4261 tax" and "has no applicability to payments for the right to provide mileage awards." The Court therefore rejects British Airways' contention that Revenue Ruling 55-534 is inconsistent with the IRS's more recent guidance. See Pl.'s Opp'n at 26–27.

Finally, the Court has considered the parties' arguments regarding whether Revenue Ruling 2002-60 and Notice 2002-63 are entitled to deference under Skidmore. See Def.'s Mot. for Summ. J. at 42–47; Pl.'s Opp'n at 31–35; see also Skidmore, 323 U.S. at 139–40. British Airways contends that they are not because, among other reasons, they do not contain a sufficient explanation for "the IRS's position that payments for FFMs earned through purchases of taxable transportation" are not subject to the I.R.C. § 4261(a) excise tax, "while payments for FFMs earned through purchases of other transportation" are subject to the tax. Pl.'s Opp'n at 31. The Court finds it unnecessary to decide what deference is due the IRS's guidance because it concludes that British Airways' payments to the domestic airlines fall within the plain language of I.R.C. § 4261(e)(3)(A) and that the legislative history of the provision is consistent with its plain language—and certainly not "clearly contrary" to it. See Bank of Am., 964 F.3d at 1103 (quoting DeCosta, 987 F.2d at 1558).

## CONCLUSION

For the foregoing reasons, the government's motions to dismiss in part, ECF Nos. 63 and 95, are **DENIED**. The government's motion for summary judgment, ECF No. 87, is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge

21